UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

—————————————————————————

HERBERT LONG,

                                        Plaintiff,

                  v.

KAREN CROWLEY, Deputy Superintendent
  of Programs, and
HELEN C.  MILLER, Senior Mail Clerk,

                                        Defendants.

—————————————————————————

**REPORT**
**and**
**RECOMMENDATION**

**09-CV-00456A(F)**

APPEARANCES:         HERBERT LONG, *Pro Se*
                     04-A-3956
                     Green Haven Correctional Facility
                     Box 4000
                     Stormville, New York 12582-0010

                     ERIC T.  SCHNEIDERMAN
                     Attorney General, State of New York
                     Attorney for Defendants
                     GEORGE MICHAEL ZIMMERMANN
                     Assistant Attorney General, of Counsel
                     Main Place Tower
                     Suite 300A
                     350 Main Street
                     Buffalo, New York 14202

<u>**JURISDICTION**</u>

        This case was referred to the undersigned by Honorable Richard J. Arcara on

July 11, 2011 for all pretrial matters including preparation of a report and

recommendation on dispositive motions.  The matter is presently before the court on

motions for summary judgment filed by Plaintiff on June 13, 2011 (Doc.  No.  32), and

by Defendants on July 29, 2011 (Doc.  No.  37).

**BACKGROUND**

Plaintiff Herbert Long ("Plaintiff"), proceeding *pro se*, commenced this civil rights action pursuant to 42 U.S.C. § 1983 on May 12, 2009, alleging violations of his constitutional rights to procedural due process in connection with a prison disciplinary hearing while incarcerated at Wende Correctional Facility in Alden, New York ("the correctional facility").  Named as Defendants were employees of New York State Department of Correctional Services ("DOCS") including Deputy Superintendent of Programs Karen Crowley ("Crowley"), Superintendent Robert K. Kirkpatrick ("Kirkpatrick"), Director of Inmate Disciplinary Norman R. Bezio ("Bezio"), Senior Mail Clerk Helen C. Miller ("Miller"), Corrections Officer S. Williams ("Williams"), Corrections Officer A. Bator ("Bator"), and DOCS Commissioner Brian Fischer ("Fischer").  In a Decision and Order filed July 15, 2009 (Doc. No. 3), District Judge Charles J. Siragusa dismissed the complaint with prejudice for failing to sufficiently allege that as a result of the claimed constitutional violations, he had suffered an atypical and significant hardship relative to the ordinary incidents of prison life.  Plaintiff appealed the dismissal of the Complaint and on April 12, 2010, the Second Circuit Court of Appeals issued a mandate (Doc. No. 7) remanding the matter, directing Plaintiff be provided an opportunity to file an amended complaint remedying the original complaint's pleading deficits.  On April 19, 2010, District Judge Arcara entered an order (Doc. No. 8) granting Plaintiff until May 20, 2010 to file an amended complaint in accordance with the Second Circuit's mandate.

On April 20, 2010, Plaintiff filed the amended complaint (Doc. No. 9) ("Amended Complaint"), naming as Defendants Crowley, Kirkpatrick, Bezio, Miller, Williams, Bator

and Fischer, and alleging two claims for relief including (1) Miller opened Plaintiff's out-going mail in violation of DOCS rules and then completed an inmate misbehavior report charging Plaintiff with violating prison rules ("First Claim"), and (2) Defendants denied Plaintiff procedural due process in the prison disciplinary hearing held on the inmate misbehavior report ("Second Claim").  By order filed August 25, 2010 (Doc. No. 13), Judge Arcara dismissed with prejudice all claims as against Defendants Kirkpatrick, Bezio, Williams, Bator, and Fischer, leaving only the First Claim alleging a violation of Plaintiff's First Amendment rights to proceed against Miller, and the Second Claim alleging denial of procedural due process in connection with the prison disciplinary hearing to proceed against Crowley.  On September 28, 2010, Miller and Crowley ("Defendants"), filed an answer (Doc. No. 15) to the Amended Complaint.

On June 13, 2011, Plaintiff filed a motion for summary judgment (Doc. No. 32) ("Plaintiff's motion"), supported by the attached Affidavit of Plaintiff in Support of Motion for an Order Granting Summary Judgment for Plaintiff Pursuant to F.R.C.P. 56 ("Plaintiff's Affidavit"), with attached exhibits A through F ("Plaintiff's Exh(s). __").  Other papers filed on June 13, 2011 in support of Plaintiff's motion include a Memorandum of Law (Doc. No. 33) ("Plaintiff's Memorandum"), and a document titled "Record of Review" (Doc. No. 34), pertaining to Plaintiff's disciplinary hearing with attached exhibits A through F ("Plaintiff's Review Exh(s). __").

On July 29, 2011, Defendants filed a motion for summary judgment (Doc. No. 37) ("Defendants' motion"), supported by the attached Statement of Undisputed Facts in Support of Summary Judgment (Doc. No. 37-1) ("Defendants Statement of Facts"), and Memorandum of Law in Support of Defendants' Motion for Summary Judgment

(Doc. No. 37-2) ("Defendants' Memorandum").[1]  Other supporting papers filed by

Defendants on July 29, 2011, include the Declaration of Assistant Attorney General

George Michael Zimmermann (Doc. No. 38) ("Zimmermann Declaration"), with a copy

of portions of the transcript of Plaintiff's deposition taken on April 5, 2011 attached as

Exhibit A ("Plaintiff's Deposition Tr. at __"),[2] the Declaration of Karen Crowley (Doc. No.

39) ("Crowley Declaration"), to which is attached as Exhibit A a copy of DOCS

Disciplinary Tier Hearing Packet ("Hearing Packet") containing all documents relevant to

this action with specific pages of the Hearing Packet denominated by Bates No. (*i.e.*,

"Hearing Packet, Bates No. __"), and the Declaration of Helen Miller (Doc. No. 40)

("Miller Declaration"), to which is attached as Exhibit A a copy of DOCS Directive 4422

("Directive 4422") regarding the DOCS Inmate Correspondence Program.

On August 23, 2011, Plaintiff filed the Memorandum of Law in Support of

Plaintiff's Opposition to Defendants' Motion for Summary Judgment (Doc. No. 44)

("Plaintiff's Response"), the Affidavit of Herbert Long in Support of Plaintiff's Opposition

to Defendant's Motion for Summary Judgment (Doc. No. 45) ("Plaintiff's Response

Affidavit") with attached exhibits A through F ("Plaintiff's Response Exh(s). __"), and the

Statement of Undisputed Facts in Support of Plaintiff's Opposition to Defendant's

Motion for Summary Judgment (Doc. No. 46) ("Plaintiff's Statement of Facts").  Oral

argument was deemed unnecessary.

---

[1] Defendants' Memorandum was also separately filed on July 29, 2011 as Doc. No. 41.  A comparison of both documents reveals no difference and why Defendants' Memorandum was filed twice is not explained.

[2] A copy of the Zimmermann Declaration is also filed, without exhibits, as Exhibit A to Doc. No. 41, i.e., Defendants' Memorandum that was separately filed on July 29, 2011.

Based on the following, Plaintiff's motion should be DENIED; Defendants' Motion should be GRANTED.

## FACTS[3]

On February 7, 2008, Plaintiff Herbert Long ("Plaintiff" or "Long"), then incarcerated at Wende Correctional Facility in Alden, New York ("the Correctional Facility"), submitted a piece of personal correspondence for outgoing mail[4] and routed to the correctional facility's mail processing room, where Defendant Helen Miller ("Miller"), in her job as mail clerk, was performing routine inspection of outgoing mail. Miller observed an envelope ("the envelope"), addressed to one Debra Thomas ("Ms. Thomas"), Plaintiff's mother, and bearing on the front of the envelope a return address in the front upper-left-hand-corner of "H. Long # 045A3956" and the correctional facility's address, but no return address information on the back envelope flap. According to Miller, the envelope's return address did not comply with DOCS Directive No. 4422 ("Directive No. 4422" or "the Directive") pertaining to DOCS Inmate Correspondence Program providing, in pertinent part,

> It is the responsibility of each inmate to type or print his or her return address on the front upper-left-hand corner and on the back flap of each outgoing envelope exactly as illustrated below.  The inmate shall use his or her commitment name unless it has legally been changed.  Failure to include all return address information in the order indicated may result in the opening and return of the mail to the inmate.

DOCS Directive No. 4422 (III)(B)(13) (underlining in original).

---

[3] Taken from the pleadings and motion papers filed in this action.

[4] The record does not specify exactly how or where an inmate submits personal correspondence to be mailed from the correctional facility.

Accordingly, Miller flagged the envelope and opened it.

Inside the envelope were three addressed stamped envelopes ("the interior envelopes") bearing the return address consisting of Plaintiff's name and the address of of Ms. Thomas.  Each of the three interior envelopes was addressed to an inmate housed at another correctional facility, including Elijah Ellis ("Ellis") at Five Points Correctional Facility, William Wright ("Wright") and Andre Jeffries ("Jeffries"), both at Dannemora Correctional Facility.  Also enclosed in the envelope was a letter from Plaintiff instructing his mother to mail the interior envelopes to the other inmates. DOCS Directive No. 4422 (III)(B)(6)(c) requires an inmate obtain "special advance authorization" before corresponding with an inmates in other correctional facilities. Because Plaintiff had not obtained such authorization to correspond with Ellis, Wright, or Jeffries, each of whom, based on the information apparent from the face of the interior envelopes, are DOCS inmates, Miller, on February 7, 2008, completed an Inmate Misbehavior Report ("Misbehavior Report"),[5] charging Plaintiff with violating DOCS Inmate Disciplinary Rules 180.11 (Failing to Comply with Correspondence Procedures), and 114.10 (Smuggling).

On February 8, 2008, Plaintiff was served with a copy of the Misbehavior Report and placed on "keep lock" confinement, where Plaintiff remained through the Tier III disciplinary hearing ("the disciplinary hearing") scheduled for February 13, 2008 before Defendant Karen Crowley ("Crowley"), DOCS Deputy Superintendent of Programs, who was the Hearing Officer ("H.O.") on the matter.  During the February 13, 2008

---

[5] Hearing Packet, Bates No. 000022.

disciplinary proceedings, Plaintiff pleaded not guilty to both charged prison rule

violations, stating that the Directive required Miller to obtain written authorization from

the correctional facility's supervisor before opening outgoing mail.  Hearing Packet,

Bates Nos. 000034-35.  Plaintiff did not specifically deny that the envelope addressed

to Ms. Thomas and opened by Miller did not contain correct return address information

but, rather, objected to Miller's opening of the envelope without first obtaining the

express, written consent of the correctional facility's superintendent as required by

Directive No. 4422. *Id.*, Bates No. 000035-36.  Crowley responded that whenever

outgoing mail had to be returned to the sender, it is no longer considered outgoing mail

but, rather, incoming mail which Directive No. 4422 requires to be opened and

inspected. *Id.*, Bates No. 000035. Plaintiff further stated that he has always included the

same return address information on his outgoing mail, and that no other mail, including

four other pieces of mail submitted on February 7, 2008, had ever been flagged for

noncompliance with Directive No. 4422.  *Id.*, Bates No. 000035-36, 000042.  Crowley

inquired whether Plaintiff wished to call any witnesses, and Plaintiff responded he

wanted to call Miller to whom Plaintiff intended to pose questions regarding Miller's

flagging and opening of Plaintiff's mail.  *Id.*, Bates No. 000039.  Crowley advised that

Miller, who had left the correctional facility for the day, was not available and adjourned

the disciplinary hearing.  *Id.*, Bates No. 000040.

When the disciplinary hearing resumed on February 20, 2008, Crowley directed

Corrections Officer Williams ("C.O. Williams"), to escort Plaintiff from his cell to the

hearing.  Hearing Packet, Bates No. 000040.  Upon arriving at Plaintiff's cell, however,

Plaintiff advised Williams he was not ready for the hearing.  *Id.*  Plaintiff never attended

the disciplinary hearing on February 20, 2008, although the parties disagree as to why. According to Defendants, C.O. Williams maintains that when Plaintiff advised he was not ready for the disciplinary hearing, Williams gave Plaintiff 15 minutes to get ready for the hearing, but that upon returning to Plaintiff's cell after 15 minutes, Plaintiff asserted he still was not ready to attend the hearing, causing Williams to report to the disciplinary hearing without Plaintiff, and to inform the H.O. that Plaintiff was refusing to attend the hearing.  *Id.*, Bates No. 000040-41.

In contrast, Plaintiff maintains that when C.O. Williams arrived at Plaintiff's cell to escort Plaintiff to the disciplinary hearing, Williams was very aggravated, refused to give Plaintiff any time to get ready, threatened to tell the H.O. that Plaintiff was refusing to attend the hearing, refused to escort Plaintiff to the hearing, and then left Plaintiff's cell. Plaintiff further maintains C.O. Williams never advised Plaintiff of the consequences of failing to attend the hearing.

In any event, it is undisputed that C.O. Williams advised Crowley that Plaintiff had refused to attend the disciplinary hearing.  Because Plaintiff refused to sign the form indicating he had decided against attending the hearing ("refusal form"), C.O. Williams provided Crowley with a refusal form signed by Williams and C.O. Bator. Crowley, in Plaintiff's absence, then commenced the disciplinary hearing, calling Miller as a witness.  Hearing Packet, Bates No. 000051.

Miller, in response to Crowley's questioning, testified at the disciplinary hearing that although she could not remember the exact number of envelopes Plaintiff had submitted to be mailed from the correctional facility on February 7, 2008, she recalled there was more than one envelope.  Miller explained that because the return address

information on the envelope addressed to Ms. Thomas did not comply with Directive No. 4422, the envelope was flagged, considered as incoming mail because it had to be returned to Plaintiff, and opened it in accordance with the Directive's procedure for handling incoming mail.  Hearing Packet, Bates No. 000042.

At the disciplinary hearing's conclusion on February 20, 2008, Crowley, relying on the written Misbehavior Report, and disciplinary hearing testimony of Plaintiff and Miller, found Plaintiff guilty on both the smuggling charge (114.10), and the correspondence violation charge (180.11).  Hearing Decision, Hearing Packet, Bates No. 000043, 000046-47.  In connection with the guilty disposition, Crowley imposed on Plaintiff a disciplinary sentence of 60 days in keep lock confinement, with concurrent loss of recreation, packages, commissary, telephone, and television privileges.  *Id.*

Plaintiff appealed the Hearing Decision to DOCS Director, Special Housing/Inmate Disciplinary Program Norman R. Bezio ("Bezio") who, on April 14, 2008, affirmed the disposition.  Hearing Packet, Bates No. 000053.  Plaintiff then challenged the Hearing Decision in an Article 78 proceeding in New York Supreme Court.  On September 22, 2008, New York Supreme Court Justice John C. Egan, Jr., found Crowley had failed to determine whether Plaintiff had made a knowing, voluntary, and intelligent waiver of his right to attend the reconvened disciplinary hearing on February 20, 2008, because there was no testimony from C.O. Williams that she had advised Plaintiff of the consequences of failing to attend the hearing.  Article 78 Decision, Hearing Packet, Bates No. 000062-63.  Justice Egan accordingly granted Plaintiff's Article 78 petition, annulled the Hearing Decision and remitted the matter to DOCS for further proceedings ("the Article 78 Decision").  *Id.*, Bates No. 000063.

## DISCUSSION

**1.    Summary Judgment**

Both Plaintiff and Defendants have filed motions seeking summary judgment.

Plaintiff argues in support of summary judgment that the record demonstrates that

Miller's undisputed opening of Plaintiff's outgoing mail on February 7, 2008, without first

obtaining authorization to do so from the correctional facility's superintendent as

required by Directive No. 4422, constituted censorship in violation of Plaintiff's rights

under the First Amendment, Plaintiff's Memorandum ¶¶ 2-4, and that Crowley, by

continuing the disciplinary hearing on February 20, 2008, *in absentia*, without first

making a determination that Plaintiff was aware of the consequences of failing to attend

the reconvened hearing, constituted a violation of Plaintiff's right to due process under

the Fifth and Fourteenth Amendments. *Id.* ¶¶ 5-17.  Defendants argue in support of

Defendants' motion that summary judgment should be granted in favor of Defendants

because the prison disciplinary sentence imposed on Plaintiff in connection with the

guilty disposition on the Misbehavior Report, *i.e.*, 60-days in keeplock confinement with

attendant loss of privileges, does not implicate a protected liberty interest sufficient to

sustain a § 1983 claim, Defendants' Memorandum at 3-5; that despite Plaintiff's

success in the state court Article 78 proceeding, the continuance of Plaintiff's

disciplinary hearing *in absentia* did not deny Plaintiff of any constitutional due process,

*id.* at 5-8; the opening of Plaintiff's mail did not occur in violation of Directive No. 4422,

*id.* at 8-9; a single occurrence of tampering with a prisoner's mail does not arise to a

constitutional violation as the directive does not created a protected liberty interest, *id.*

at 9; a violation of a DOCS Directive does not arise to a constitutional violation, *id.*, and

10

the fact that Plaintiff eventually succeeded in having the Hearing Decision overturned in

the Article 78 Decision does not establish a violation of Plaintiff's constitutional due

process rights.  *Id.* at 11.  In further support of Plaintiff's motion, and in opposition to

Defendants' motion, Plaintiff asserts Defendants are collaterally estopped by the Article

78 Decision from relitigating the issue of whether Plaintiff was denied procedural due

process in connection with the disciplinary hearing.  Plaintiff's Reply at 4-6.

 Summary judgment on a claim or defense will be granted when a moving party

demonstrates that there are no genuine issues as to any material fact and that a

moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(a) and (b);

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 250-51 (1986); *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010).  The party

moving for summary judgment bears the burden of establishing the nonexistence of any

genuine issue of material fact and if there is any evidence in the record based upon any

source from which a reasonable inference in the non-moving party's favor may be

drawn, a moving party cannot obtain a summary judgment.  *Celotex*, 477 U.S. at 322.

"Where, as here, the nonmovant bears the burden of proof at trial, the movant may

show prima facie entitlement to summary judgment in one of two ways: (1) the movant

may point to evidence that negates its opponent's claims or (2) the movant may identify

those portions of its opponent's evidence that demonstrate the absence of a genuine

issue of material fact, a tactic that requires identifying evidentiary insufficiency and not

simply denying the opponent's pleadings."  *Salahuddin v. Goord*, 467 F.3d 263, 272 (2d

Cir. 2006).

 Once a party moving for summary judgment has made a properly supported

showing as to the absence of any genuine issue as to all material facts, the nonmoving

party must, to defeat summary judgment, come forward with evidence that would be

sufficient to support a jury verdict in its favor and "may not simply rely on conclusory

statements or on contentions that the affidavits supporting the motion are not credible."

*Goenaga v. March of Dimes Birth Defects Foundation*, 51 F.3d 14, 18 (2d Cir. 1995)

(citing cases).  Rather, Fed. R. Civ. P. 56(e) requires that

> When a motion for summary judgment is made and supported as provided in this
> rule, an adverse party may not rest upon the mere allegations or denials of the
> adverse party's pleading, but the adverse party's response, by affidavits or as
> otherwise provided in this rule, must set forth specific facts showing that there is
> a genuine issue for trial.  If the adverse party does not so respond, summary
> judgment, if appropriate, shall be entered against the adverse party.

"[F]actual issues created solely by an affidavit crafted to oppose a summary judgment

motion are not 'genuine' issues for trial."  *Hayes v. N.Y. City Dep't of Corr.*, 84 F.3d 614,

619 (2d Cir.1996).

Defendants are alleged to have violated Plaintiff's civil rights under 42 U.S.C. §

1983, pursuant to which an individual may seek damages against any person who,

under color of state law, subjects such individual to the deprivation of any rights,

privileges, or immunities protected by the Constitution or laws of the United States.

Section 1983, however, "'is not itself a source of a substantive rights,' but merely

provides 'a method for vindication of federal rights elsewhere conferred.'" *Albright v.

Oliver*, 510 U.S. 266, 271 (1994) (citing *Baker v. McCollan*, 443 U.S. 137, 144 n. 3

(1979)).  Thus, "[t]he first step in any such claim is to identify the specific constitutional

right allegedly infringed."  *Id.*  (citing *Graham v. Connor*, 490 U.S. 386, 394 (1989); and

*Baker*, *supra*, at 140).  In the instant case, Plaintiff alleges Defendants violated his

12

rights under the First Amendment by opening and reading his outgoing mail without obtaining the express written authorization of the correctional facility's superintendent, as required by Directive No. 4422(III)(B)(9), and his rights to procedural due process by denying Plaintiff the opportunity to appear at the disciplinary hearing and to call witnesses on his behalf.

## 2.    First Claim - Censorship

Plaintiff alleges that Defendant Miller, by opening his outgoing mail without first obtaining the correctional facility superintendent's express, written authorization, as required by Directive No. 4422 (III)(B)(9), engaged in censorship in violation of the First Amendment.  Amended Complaint, First Claim.  Plaintiff argues in support of summary judgment on this claim that because outgoing mail presents fewer security concerns to the correctional facility than incoming mail, outgoing mail is subjected to greater constitutional protection under the First Amendment.[6]  Plaintiff's Memorandum ¶¶ 2-4. In contrast, Defendants argue that Miller's opening of Plaintiff's mail on February 7, 2008, was in accordance with Directive No. 4422 (III)(B)(13) which provides that outgoing mail that does not bear a correct return address will be opened and returned to the inmate who attempted to send the mail.  Defendants' Memorandum at 9. Defendants further maintain that even if Miller's opening of the envelope on February 7, 2008, was improper, one occasion of prison mail tampering is insufficient to establish a

---

[6] This assertion is specious as outgoing prisoner mail could easily involve escape plans or other security matters; however, as this issue is not addressed by Defendants, the court need not consider it further.

constitutional violation, *Id.* at 10, and violations of DOCS Directive does not give rise to liability under § 1983. *Id.*

That Miller opened the subject envelope on February 7, 2008 without first obtaining the correctional facility superintendent express, written authorization is undisputed.  Whether such action was in violation of Directive No. 4422, however, depends on how the Directive is construed.

Specifically, Directive No. 4422(III)(B)(9) provides that "[o]utgoing correspondence . . . shall not be opened, inspected, or read without express written authorization from the facility Superintendent."  The superintendent is not permitted to grant such authorization

> unless there is a reason to believe that the provisions of this or any directive or inmate rule or regulation have been violated, that any applicable state or federal law has been violated, or that such mail threatens the safety, security, or good order of a facility or the safety or well being of any person.  Such written authorization by the Superintendent shall set forth specific facts forming the basis for the action.

Directive No. 4422(III)(B)(9)(a).

Further, the Directive provides that "[f]ailure to include all return address information in the order indicated [by Directive No. 4422(III)(B)(13)] may result in the opening and return of the mail to the inmate."  Directive No. 4422(III)(B)(13) (underlining added).

Given the use of the equivocal "may" in Directive No. 4422(III)(B)(13), along with Directive No. 4422(III)(B)(9)(a)'s provision that a correctional facility superintendent shall not authorize the opening of an inmate's outgoing correspondence without, *inter alia*, a supportable belief that "the provisions of this . . . directive . . . have been violated," a reasonable construction of Directive No. 4422 is that Miller, upon observing

on February 7, 2008 that the subject envelope failed to include all the return address information required by Directive No. 4422(III)(B)(13), was not required to open the envelope, but had the discretion to determine whether the envelope should be opened and, if so, to request from the correctional facility superintendent the express, written authorization to do so.

Defendants do not address this point, asserting instead that Defendant Miller believed that under Directive No. 4422, upon determining the envelope did not contain the requisite return address information, the mail was to be treated administratively as ordinary incoming mail and opened in accordance with the portion of Directive No. 4422 pertaining to incoming mail.  Defendants' Statement of Facts ¶ 10 (attributing to Miller's statement that Miller opened the envelope "because she believed that under the mail regulations it was now considered incoming mail and was to be opened, checked, and returned to the sender." (citing Miller Declaration ¶¶ 5-7); Hearing Packet, Bates No. 000035 (Crowley stating at Disciplinary Hearing on February 13, 2008 that "I have to find this section, but whenever mail is sent out it has to be returned to you, when its returned to you, it's considered incoming mail."); Hearing Packet, Bates No. 000042 (exchange between Crowley and Miller at Disciplinary Hearing on February 20, 2008 establishing that outgoing mail that is insufficiently addressed is returned to the inmate but considered as incoming mail and opened).  On the other hand, no evidence in the record supports a reasonable inference that Miller single-out or targeted Plaintiff's mail because of a suspicion that the envelope contained prohibited material.

As relevant to incoming mail Directive No. 4422 provides

All incoming general correspondence will be opened and inspected for cash,

checks, money orders, printed or photocopied materials, or contraband.  The inmate's presence is not required during the inspection of incoming general correspondence.

Directive No. 4422(III)(G)(1)(b).

Directive No. 4422 has withstood federal constitutional challenge as reasonably related to a legitimate penological interest insofar as the purpose of opening and inspecting incoming general inmate correspondence is to ensure it contains no contraband which would otherwise be delivered to the inmates.  *See Webster v. Mann*, 917 F.Supp. 185, 187 (W.D.N.Y. 1996) (holding prison officials may, under Directive No. 4422, open incoming mail to ensure the correspondence contains no contraband, citing cases). The opening of an inmate's outgoing mail for improper addressing, as in this case, has also been held not to violate any constitutional rights of the inmate.  *See Billups v. New York State*, 885 F.Supp. 38, 41 (N.D.N.Y. 1995) (holding opening improperly addressed outgoing mail outside inmate's presence did not violate any constitutional rights of inmate so long as mail was not recognized as privileged correspondence).

Defendants, however, fail to point to any DOCS Directive or other regulation pursuant to which outgoing inmate correspondence failing to contain the required return address information is to be treated as incoming mail and opened in accordance with Directive No. 4422(III)(G)(1)(b), rather than requiring the correctional facility superintendent's approval as provided under Directive No. 4422(III)(B)(9).  Just as a reasonable construction of Directive No. 4422 is that, upon determining an outgoing piece of correspondence contains insufficient return address information requires the mail processing clerk to obtain the express, written approval of the correctional facility superintendent prior to opening the envelope, an equally reasonable construction of

16

Directive No. 4422 is that, upon determining the outgoing mail's improper return address information required the mail to be returned to the putative sender, the mail would be then be treated as incoming mail which Directive No. 4422(III)(G)(b) specifically requires to be opened prior to delivery to the recipient inmate so as to ensure the mail contains no contraband.

Which construction of Directive No. 4422 was intended is, however, irrelevant because a violation of a DOCS Directive does not arise to a violation of constitutional rights to support a § 1983 civil rights claim. *Holcomb v. Lykens*, 337 F.3d 217, 224 (2d Cir. 2003) (holding state prison directives do not created liberty interests protected by Due Process Clause). *See also Rivera v. Wohlrab*, 232 F.Supp.2d 117, 123 (S.D.N.Y. 2002) (holding a violation of a DOCS Directive is not a violation of New York statute or regulation). Moreover, "the interception of [an inmate's] prison correspondence does not violate that individual's First or Fourth Amendment rights if prison officials had 'good' or 'reasonable' cause to inspect the mail." *United States v. Felipe*, 148 F.3d 101, 108 (2d Cir. 1998). Here, Miller had "good" or "reasonable" cause, based on the faulty return address information in violation of Directive No. 4422, and considering legitimate security concerns, to open the envelope. Accordingly, even assuming, *arguendo*, that Miller's opening of the improperly marked envelope on February 7, 2008 without first obtaining the correctional facility superintendent's "express, written authorization" was in violation of Directive No. 4422, such violation does not constitute censorship in violation of protected First Amendment interests cognizable under § 1983.

As such, Plaintiff's First claim is without merit and summary judgment on Plaintiff's First Claim should be DENIED as to Plaintiff and GRANTED in favor of

Defendants.

### 3.    Second Claim - Procedural Due Process

Plaintiff claims he was deprived of procedural due process in connection with the disciplinary hearing when Defendants failed to determine whether Plaintiff had waived his right to appear at the reconvened disciplinary hearing on February 20, 2007, with full knowledge of the consequences of such action, including that by failing to attend the disciplinary hearing on February 20, 2007, and then conducted the reconvened hearing *in absentia*, such that Plaintiff was precluded from calling any witnesses.  Amended Complaint, Second Claim.  In support of summary judgment, Plaintiff asserts that Crowley, by conducting the reconvened disciplinary hearing in absentia, violated several New York regulations pertaining to prison disciplinary hearings.  Plaintiff's Memorandum ¶¶ 5-17.  In contrast, Defendants do not argue that no disciplinary hearing regulations were violated but, rather, argue that regardless of whether Plaintiff was denied any due process in connection with the disciplinary hearing, the disciplinary sentence imposed, *i.e.*, 60 days in keeplock confinement with attendant loss of privileges, fails to implicate a protected liberty interest sufficient to support a claimed due process violation under *Sandin v. Connor*, 515 U.S. 472 (1995) and thus actionable under § 1983.  Defendants' Memorandum at 3-5.  Defendants alternatively assert that the violation of a state regulation in connection with a prison disciplinary hearing does not arise to a constitutional due process violation provided there was at least some evidence in the record supporting the disciplinary hearing disposition.  *Id.* at 5-8 (citing, *inter alia*, *Superintendent, Massachusetts Correctional Institution, Walpole v. Hill*, 472

U.S. 445, 455 (1985)).  In further support of Plaintiff's motion, and in opposition to Defendants' motion, Plaintiff argues that the Article 78 Decision collaterally estops Defendants from relitigating the issue of whether a due process violation occurred in connection with the Disciplinary Hearing.  Plaintiff's Reply at 4-6.  Defendants have not responded to this argument.[7]

Preliminarily, the court considers whether the prison disciplinary sentenced imposed consisting of 60 days in keeplock confinement with loss of privileges implicated a protected Fourteenth Amendment liberty interest.  In addition to the Dues Process Clause itself, the Supreme Court "recognize[s] that States may under certain circumstances create liberty interests which are protected by the Due Process Clause." *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995).  Nevertheless, disciplinary confinement in a correctional facility does not deprive an inmate of a protected liberty interest unless such confinement imposes "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484. "Both the conditions and their duration must be considered, since especially harsh conditions endured for a brief interval and somewhat harsh conditions endured for a prolonged interval might both be atypical." *Sealy v. Giltner*, 197 F.3d 578, 586 (2d Cir. 1999) (citation omitted).  While the Second Circuit has cautioned against recognizing a"bright-line rule regarding the length or type of sanction" meeting *Sandin's* "atypical

---

[7]Defendants do not contend that Plaintiff's federal due process claim is barred by the doctrine of *res judicata* based on Plaintiff's successful Article 78 proceeding which resulted in the annulment of the disciplinary hearing disposition.  Notably, *res judicata* will not bar a § 1983 action following the resolution of an Article 78 proceeding on the same issue because the full measure of damages available under § 1983, *i.e.*, monetary damages, is not available under Article 78 where damages are limited to those incidental to the grant of relief.  *See Colon v. Coughlin*, 58 F.3d 865, 870 n. 3 (2d Cir. 1995).

and significant hardship" standard, courts within the Second Circuit have found prison disciplinary sentences in excess of the 60-days keep-lock confinement with loss of privileges imposed on Plaintiff insufficient to implicate a protected liberty interest. *See Sealey*, 197 F.3d at 589-90 (holding 101 days confinement under regular SHU conditions not atypical or significant), *Walker v. Caban*, 2008 WL 4925204, at * 11 (S.D.N.Y. Nov. 19, 2008) (holding 90 days in solitary confinement did not implicate protected liberty interest); and *Rivera v. Coughlin*, 1996 WL 22342, at * 5 (S.D.N.Y. Jan. 22, 1996) (finding 89 days in keep-lock confinement with loss of privileges did not implicate protected liberty interest under *Sandin*).   In the instant case, Plaintiff's description of the conditions he endured while in keeplock confinement for 60 days fails to establish such conditional of confinement implicated any protected liberty interest because the conditions of Plaintiff's keeplock, not SHU, confinement are less severe than those at issue in *Sealey* which the Second Circuit held did not implicate any protected liberty interest. *Sealey*, 197 F.3d at 589-90.

In particular, in *Sealy*, the inmate was confined in SHU for 101 days. *Sealey*, 197 F.3d at 587.  While in SHU, the inmate was confined to his SHU cell for 23 hours a day with one hour outside his cell for recreation. *Id.* The inmate was limited to three showers per week, and lost various privileges. *Id.*  The inmate described his SHU cell as being noisier than the general prison population cells, and that while confined in SHU, he had human feces thrown on him by other inmates on a few occasions. *Id.*

In contrast, Plaintiff described confinement in keeplock as being "in the cell all day except for one hour of rec[reation] in the morningtime.  Other than that, you're in your cell all day."  Plaintiff's Dep. Tr. at 33.  Although Plaintiff, while confined in

20

keeplock, was not permitted to go to the correctional facility's law library, Plaintiff was permitted to request materials from the law library which were brought to his cell.  *Id.* Plaintiff continued to received three meals a day, albeit the food was brought to Plaintiff on a tray.  *Id.*[8]  Regular medical checks of inmates in keeplock were conducted.  *Id.* Despite confinement in keep-lock, Plaintiff occupied his regular cell with another inmate who was not on keep-lock.  *Id.* at 35.  Participation in programs is not permitted to inmates in keep-lock.  *Id.*

Because Plaintiff's 60-days confinement in keeplock subjected Plaintiff to conditions that were no more severe than those to which the inmate in Sealy was subjected to for 101 days while in SHU, it logically follows that Plaintiff's confinement in keeplock, in this case, does not implicate a protected liberty interest.  As such, even assuming, *arguendo*, that Plaintiff was denied any constitutional due process protection in connection with the disciplinary hearing, because the resulting disciplinary sentence implicates no protected liberty interest, prerequisite under *Sandin* for Plaintiff's second claim, such due process violation is insufficient to support Plaintiff's § 1983 claim.[9]

Alternatively, where an inmate claims he was denied due process in a prison

---

[8] Plaintiff does not assert that the meals he was served while in keeplock contained food items different that what was served the general prison population.

[9] This determination does not mean that Plaintiff could never recover any money damages in connection with the procedurally deficient prison disciplinary hearing.  Rather, upon receiving the Article 78 Decision, Plaintiff could have commenced an action against the State for money damages in New York's Court of Claims.  *See Dominick Dan Alonzo, Inc. v. State*, 423 N.Y.S.2d 301, 302 (3d Dep't. 1979) (holding availability of Article 78 proceeding to review state official's action does not preclude New York Court of Claims from exercising jurisdiction over money damages claim).  Had Plaintiff commenced such an action, the violation of state regulations, as determined by Justice Egan in connection with the Article 78 proceeding, would have collaterally estopped Defendants from seeking to avoid financial liability on the state regulation violations.

disciplinary hearing because he was found guilty of violating a prison rule based on insufficient evidence, "the claim must be rejected if there was at least 'some evidence' to support the decision." *Gaston v. Coughlin*, 249 F.3d 156, 163 (2d Cir. 2001) (citing *Walpole*, 472 U.S. at 455).  In the instant case, the evidence on which Crowley relied in finding Plaintiff guilty of the charged prison rule violations included the Misbehavior Report prepared by Miller as well as Miller's hearing testimony, Plaintiff's testimony in which Plaintiff admitted placing the interior envelopes into the envelope addressed to Ms. Thomas, objecting only to the manner in which the envelope addressed to Ms. Thomas was opened by the mailroom staff without first obtaining the express written authorization of the correctional facility's superintendent, and Directive No. 4422. Hearing Packet, Bates No. 000043, 000047.[10]  The record thus establishes at least "some evidence" supporting the Hearing Decision and requiring Plaintiff's due process claim be rejected.  *Gaston*, 249 F.3d at 163.

Accordingly, the court does not consider Plaintiff's argument made in further support of Plaintiff's motion, Plaintiff's Reply at 4-6, that the Article 78 proceeding

---

[10] Insofar as Plaintiff does not deny that the return address information on the envelope addressed to Ms. Thomas did not comply with Directive No. 4422, Plaintiff's challenge to Miller's opening of the envelope without first obtaining the express written authorization of the correctional facility's superintendent in accordance with Plaintiff's construction of Directive No. 4422, implies Plaintiff is seeking to apply the exclusionary rule to suppress the contents of the envelope from evidence at the disciplinary hearing.  The exclusionary rule, however, does not apply to a civil action brought under § 1983. *See Townes v. City of New York*, 176 F.3d 138, 146 (2d Cir. 1999) (recognizing the exclusionary rule as having been held to apply only to criminal cases and declining to extend exclusionary rule to § 1983 civil rights action). *See also Knight v. Keane*, 2006 WL 89929, at * 2 (S.D.N.Y. Jan. 12, 2006) (rejecting inmate plaintiff's claim that inmate's outgoing letter improperly opened in violation of DOCS Directive not required to be suppressed from evidence at resulting prison disciplinary hearing).   Accordingly, even if Miller's opening of the envelope addressed to Ms. Thomas without first obtaining the correctional facility superintendent's permission to do so violated Directive No. 4422, the exclusionary rule would not require suppressing the contents of the envelope and thus its use as evidence to support the disciplinary charges against Plaintiff.

decision collaterally estops Defendants from relitigating the issue of whether a due process violation occurred in connection with the Disciplinary Hearing.

## **CONCLUSION**

Based on the foregoing, Plaintiff's motion for summary judgment (Doc. No. 32) should be DENIED; Defendants' motion for summary judgment (Doc. No. 37) should be GRANTED.  The Clerk of the Court should be directed to close the file.

Respectfully submitted,

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      March 22, 2012
                  Buffalo, New York

ORDERED that this Report and Recommendation be filed with the Clerk of the Court.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(d) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.**

*Thomas v. Arn,* 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys for the Plaintiff and the Defendants.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      March 22, 2012
            Buffalo, New York